The usual order for an account was taken in the court below, and a report returned there, to which sundry exceptions were filed. The only *Page 37 
one necessary to state was for that the master hath therein credited the defendant with the sum of $4,000 because of a decree rendered against him in the court of equity for the county of Currituck, in a suit wherein Spence Hall and others were plaintiffs and the said Gatlin was defendant. The item of credit thus excepted to was allowed solely upon evidence of the proceedings in the suit referred to and of the decree therein made. From this it appeared that Spence Hall, James G. Hall, and Isaac N. Lamb and his wife Sidney, filed their bill against the said Gatlin, as executor of Isaac Lamb, deceased, and therein charged that Spence Hall, the father of the plaintiffs, Spence, James, and Sidney, died in 1807, and before his death duly made a last will and testament, whereof he constituted his wife Polly sole executrix during her widowhood and no longer, and after her widowhood, should she (38) marry again, constituted Thomas R. Raynor sole executor; that the said Polly proved the will and took upon herself the office of executing it. The bill charged that by the will the testator directed that his schooner Sidney should be kept running as long as his executrix should think proper, or so long as she remained a widow, and that his wife should have the privilege of sending by said schooner for such necessaries as her family might want, and that the remainder of the earnings of the schooner should form a part of his estate. It was charged, also, that the testator directed that his negroes, Big George and Little George, should be set at liberty on 1 January, 1820, and that at the death or marriage of his wife all his property should be divided among the testator's children then living. The bill charged that the testator's widow kept the schooner Sidney running from the death of the testator until her intermarriage, in 1814, with Isaac Lamb, the testator of the defendant Gatlin, and received of the earnings of the schooner, exclusive of what she was entitled to receive for the family use, the sum of $3,000 and upwards, and that she sold the negro, Big George, for the sum of $300, and that these sums, upon her intermarriage as aforesaid, came into the hands of her second husband, Isaac Lamb; that upon such intermarriage, Rainor, the other executor of Hall, qualified, and took into his possession the unadministered assets of his testator; that the plaintiffs in that bill, Spence, James, and Sidney, together with Jordan Hall, since deceased, were the persons entitled, upon the intermarriage of Polly Hall with Isaac Lamb, to the property of the testator; that Jordan Hall had died intestate, and the said Isaac Lamb had administered upon his estate, and the plaintiffs, Spence, James, and Sidney, were his sole next of kin; that the said Isaac Lamb had died, having a very large personal estate, which came to the hands of the defendant Gatlin, his executor. The said bill prayed process against the said Gatlin and Raynor, that Gatlin might be compelled to account for the sums so improperly retained by *Page 38 
the wife of Hall, and on her intermarriage passed over to her second husband, and Raynor to account for the rest of the estate to which (39) the plaintiffs were entitled. To this bill answers were put in.
That of the defendant Gatlin admitted all the facts set forth in the bill, except that he declared his ignorance as to the amount of earnings of the schooner, which came to the hands of the widow of Hall, and prayed that the plaintiffs might be put to the proof thereof; and the answer of Rainor also admitted the facts charged, but alleged that he had fully accounted for all the estate which had come to his hands. It did not appear what order was taken in the suit upon the coming in of these answers, but a document was afterwards filed, purporting to be a report under a rule of reference, and to be made by S. Ferebee, in which, upon an examination of the depositions in the case, a statement was submitted of the matters in account. This statement, as to the freights and profits of the schooner, purported to conform to a deposition of Jeremiah Eldridge, the commander thereof (but no deposition was exhibited). It makes the total amount of profits on the schooner, with interest until 1832, $5,090.30; added thereto as debits the price of negro George $350, and interest thereon from 1809 to 1832, $462, making a total of debits $5,902.30; then followed a lumping deduction of "sundry errors," by this sum of overcharge on items and interest, and commissions on the earnings of the vessel, and for one-fourth part of the earnings due Jordan Hall's estate, $1,902.30, leaving the exact balance of $4,000, which the referee reported as the sum due the plaintiff, as by the above statement. This report was thus subscribed: "I sign this report at the request of the plaintiff, I. G. Hall, as being made by the parties: S. Ferebee." And then followed the decree, "That this cause coming on to be heard on the bill, answers, and report of the referee, it is ordered, adjudged, and decreed that the plaintiffs recover out of the assets in the hands of the defendant the sum of $4,000, in full satisfaction of their claims. It is further ordered, adjudged, and decreed that the costs be paid out of the assets in the hands of the defendant."
We are of opinion that the plaintiffs in this case calling upon their trustee to account with them for their share of Isaac Lamb's estate are at liberty to question the correctness of this decree, which the defendant sets up as a charge, for its full amount, upon that estate. It is not in truth a decree rendered in invitum, and by a judgment of the court to which the defendant was compelled to submit, and which, therefore, not only binds him, but those also for whose benefit *Page 39 
he held the estate, unless it can be impeached for fraud; but it is a voluntary settlement between the defendant and the persons then claiming, which the parties to that settlement have chosen to invest with the form of a judicial determination. The decree is founded upon the report — that is, without authority — and is avowedly adopted because it was made by the parties. A decree thus rendered, as against the present plaintiffs, has no force except so far as it is seen to be just.
The plaintiffs insist that upon the face of the bill filed in that suit it appears that the claimants had no demand against the executors of Isaac Lamb. That bill is evidently based upon the assumption that Lamb was answerable out of his own estate for any sums of money due from his wife at the time of her marriage to the legatees of her first husband. This assumption was unfounded, and until there be some explanation given why a claim thus unfounded was admitted by the executor, he cannot be permitted to set it up as a debt against the estate which he ought to pay and his cestuis que trustent to allow. The principle of law and equity is undoubted that a husband as such is not chargeable with the antecedent debts of his wife, unless they be reduced to judgment during the coverture. The allegations in the bill that the earnings of the schooner and the price of the negro George passed from the widow unto her second husband upon the intermarriage cannot be understood as meaning more than that the property which came to his hands by the marriage was increased by the amount of what had thus been received by her and not accounted for. Money has no earmarks, and without a specific averment to that effect it cannot be intended that the identical money arising from these earnings and the price of the negro was delivered over to the second husband. Besides, it is insisted that the account so settled, whether fraudulently or negligently, has been made up most inaccurately. The bill charged the widow (41) with having sold George for $300, and the answer admitted it, yet in the account the price, without evidence, is set down, at $350, and the interest is calculated upon that sum. It is moreover objected that the account made out between the parties in the former suit is so stated as not to present an opportunity of examining its correctness. All the credits are grouped together into one item — of errors in overcharges and interest, of commissions, and of the testator's fourth of Jordan Hall's share of the earnings of the vessel, amounting to $1,902.30, so as to leave a round sum of $4,000. It is further objected that the testator in right of his wife was equally well entitled to a fourth part of Jordan Hall's share of the sum charged for the price of George, and this is not deducted. To these objections no satisfactory answers have been made, and we therefore feel it our duty to allow the exception. The decree is not evidence to support the master's finding. *Page 40 
But while we do this, we think it right to recommit the report for the purpose of making an examination into the justice of the claim of Spence Hall and others, which was not open while the decree was regarded as conclusive. It appears from the pleadings in this cause that after the intermarriage of Isaac Lamb with the widow of Spence Hall, he became guardian of two of said Hall's children, and also administered upon the estate of the one that died. In his capacity of guardian, as well as that of administrator, it was his duty to secure what was due to his wards, and to his intestate, and whatever was then due from himself and wife ought to be regarded as so much in his hands as guardian and administrator. The master, therefore, to whom the report is recommitted upon the allowance of this exception, is directed to inquire and report whether anything, and if anything, what amount was due from Isaac Lamb, deceased, to Spence Hall, James G. Hall, and Isaac N. Lamb and Sidney, his wife, because of the said Isaac's guardianship to any of these parties, or of their being the next kin of Jordan Hall, the intestate of the said Isaac Lamb. The decree, we think, ought to be a protection to the defendant for such sums as may be ascertained to have been justly due to the claimants in that suit, although these sums did not become (42) due in the manner alleged in the pleadings therein.
PER CURIAM. Decree accordingly.
Cited: Bank v. Cousins, 119 N.C. 228; Simmons v. McCullin, 163 N.C. 414.